## In re ENDACOTT.
### Patent Appeal No. 2914.

Court of Customs and Patent Appeals.
May 23, 1932.

Royal R. Rommel, of Washington, D. C., for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office, affirming the rejection by the examiner of twenty-eight out of twenty-nine claims in a patent application relating to alleged improvements in methods and apparatus for the distribution of liquefied gas to consumers of same.

Of the rejected claims, Nos. 1 to 13, inclusive, are method claims, and Nos. 14 to 28, inclusive, are apparatus claims.

The brief for appellant divides these method and apparatus claims into two groups each. We quote Nos. 5, 11, 18, and 25 as representative of these four groups, respectively. Also, for purposes later to appear, we quote claim 1:

"1. In a method of distributing liquefied gas the step which consists in weighing the same into a consumer's container at the point of delivery."

"5. The method of dispensing liquefied gas to a customer's premises without interrupting the service flow of gas from a customer's liquefied gas tank to the customer's premises, which consists in weighing the customer's tank on the customer's premises during service flow of gas, to ascertain the amount of liquefied gas in the customer's tank, dispensing liquid gas into the tank for replenishing the supply therein during the service flow of gas to the customer's premises, and weighing the customer's tank after the replenishing supply is in the container to ascertain the weight of the tank and contents thereof during the service flow of gas to the customer's premises and to determine the net amount of liquefied gas dispensed at the filling operation in the customer's tank."

"11. The method of distributing high pressure liquefied gas to customers which consists in transporting a large container having a distribution supply of high pressure liquefied gas therein along a route from customer to customer, appropriately ascertaining the quantity of liquefied gas in the respective customer's tank during service flow of gas into the customer's premises, and where required connecting the distributing container with the customer's tank and discharging high pressure liquefied gas from the distributing container into the customer's tank and replenishing the customer's tank to the desired extent during the service flow of gas from the customer's tank to the customer's premises."

"18. In apparatus for distributing liquefied gas and the like the combination of a customer's tank for receiving liquefied gas, service connections to the customer's tank which will enable the tank to be lifted without disconnecting service flow of gas from the tank thru said service connections, means to lift and weigh the tank, a portable distribution tank having a supply of liquefied gas therein, means for detachably connecting the distribution tank with the customer's tank for replenishing the latter with the liquefied gas, and means for pressure forcing the liquefied gas from the distribution tank into the customer's tank."

"25. In apparatus for distributing liquefied gas the combination of a customer's tank, a service line to the customer's tank including a flexible connection which will permit the tank to be moved without discontinuing the gas flow from the tank thru the service line, a frame, scales on the frame, and means associated with the scales for elevating the tank to place the weight of the same and the contents thereof on the scales."

The references cited are:

Lippincott, 753718, March 1, 1904.

Kramer, 1614561, January 18, 1927.

It is explained before us that the liquefied gas referred to in the claims is a byproduct of natural gas, comprising the lighter fractions of the natural gasoline, propane and butane, separated in the form of vapor,

which is reduced to a liquid state by recondensation and kept in such state under superatmospheric pressure. When the pressure is lessened the material again vaporizes and passes to the burners in vapor form.

Appellant's structure comprises a receiving tank for the liquefied gas, located upon the premises of the consumer, connected by a flexible tube to a service line through which service line the vapor gas (into which the liquefied gas is converted by the modification of the superatmospheric pressure) may flow continuously to the burners.

In operation the liquefied gas is delivered into the consumer's container from the distributing tank wagon through a hose or tubing with the use of a pump. The container is placed in a housing on the top of which is a frame having a base that carries scales, and, by means of turn buckle lifting tongs, the container may be suspended from the scales and the weight thereof determined before and after filling.

Much emphasis is placed by appellant upon this weighing feature and upon the fact that the tank and contents may be weighed without. interrupting the low-pressure service flow of gas to the burners.

The claims quoted, supra, as representative are all combination claims, except that claim No. 1 seems to be limited to the single step of weighing the gas into the container at the point of delivery. Although so limited, it is obvious that this claim is quite broad and, as worded, covers any and all processes of weighing any liquefied gas into a consumer's tank at the point of delivery. Since it claims no method of, nor any apparatus for, the step, we are unable to see wherein it embraces invention recognizable for patent protection.

As stated in the brief of the solicitor for the Patent Office: "There is certainly nothing inventive in weighing any saleable substance into a consumer's container. The only other feature in this claim is that the weighing is done 'at the point of delivery.' It is not seen how any inventive effort is required to make the public aware of the fact that the weighing can be done at any place desired."

An analysis of the broadest of appellant's remaining claims discloses that the entire combination for which patent is sought comprises the following elements:

(a) The customer's container; (b) the flexible tube (whose flexibility enables the tank to be lifted for weighing without interrupting the flow of the gas) connecting the tank with (c) the service line running to the burner; (d) means (the turn buckle lifting tongs, frame, and scales) to lift and weight the tank; (e) a portable distribution tank (the tank wagon or truck used by the seller in delivering the gas) "having a supply of liquefied gas therein"; (f) means (a detachable hose or pipe) running from the distribution tank to the customer's tank; and (g) means (a pump) for pressure forcing the gas from the distributing tank into the container of the customer.

Certain of the claims, such as No. 11, supra, relate more particularly to the method of transporting a large container from customer to customer and replenishing the tank of each in the manner described.

The rejection by the tribunals of the Patent Office was principally for lack of invention, chiefly in view of Lippincott. Certain of the claims, such as No. 11, and certain features of those represented by No. 18, were secondarily rejected on the ground of "aggregativeness."

The patent to Lippincott relates to soda water apparatus. In the specification thereof it is said: "This invention has for its object to provide improved means for indicating when the tank of a soda-water fountain is being charged with soda-water the quantity or number of gallons of the water within the tank at any time."

The Lippincott apparatus shows a tank for soda water, supported by a spring whereby the tank's position vertically is determined by the weight of the water therein. It has a flexible pipe or tube connecting it with the tank of the customer. There is also a flexible tube connecting the customer's tank with the soda fountain. The customer's tank is so suspended as that it is free to change its position while being charged and while soda water is being drawn from it at the fountain. It is equipped with an annunciator which, by the aid of an electrical device, will sound an alarm when a predetermined quantity of water has entered the tank or has been withdrawn therefrom. There is also an indicator carrying a pointer which is capable of being so arranged as to indicate upon a dial the number of gallons of water entering the tank while the latter is being charged, or to indicate the diminution of the water as same is withdrawn for use at the fountain.

The Kramer patent discloses a tank similar to those in common use for delivering gasoline to filling stations.

From the description of the Lippincott combination apparatus it appears that the following elements are present therein:

(a) A portable distribution tank; (b) flexible tube; (c) customer's tank; (d) service line connecting tank with fountain; (e) lifting means; (f) means to indicate the measure or quantity of the contents of the consumer's tank; and (g) pressure for forcing the material from the tank of the distributor to the tank of the consumer and from the latter tank to the fountain.

The board held the Lippincott combination to show "the full equivalent" of the combination typified in claims such as No. 18, and to be a full anticipation of claims such as No. 25, as well as of the several method claims.

Appellant's specific structure for lifting his tank, not disclosed in the references, received recognition by the Board of Appeals, and patent on the combination including same was granted by the allowance to appellant of claim No. 29.

In the light of numerous authorities, we are unable to satisfy ourselves that the decision of the board was erroneous.

It is very earnestly argued in behalf of appellant that his invention is directed to wholly different objects than that of the Lippincott invention. In a certain sense this is true. That is to say, liquefied gas and soda water are different in nature. But in a mechanical sense there is an analogy between them, and there is, as has been shown, a striking analogy in the mechanical principles which underlie the devices for handling these substances as above described.

Every substantial mechanical principle present in every step of appellant's process (as defined, for example, in claim 5) is found in Lippincott, and the mechanical principle of every element of appellant's apparatus (as defined, for example, in claim No. 25) is present in the apparatus of Lippincott, except the specific lifting structure covered by allowed claim No. 29, and we find no new nor unobvious principle in the combination.

The foregoing statement does not, of course, apply to those claims which embrace as part of the combination the distributing tank and the features connecting it to the consumer's tank, but the rejection of these claims may very properly be rested upon the ground of aggregation, as the board held.

It is true that modification of the elements of Lippincott's structure was essential to adapt them for use in the handling of liquified gas, but the mechanical principles involved are simple and well known and are shown individually and in combination in the Lippincott structure.

Accordingly, we must hold that the devising of such parts and the combining of them on the part of appellant was a matter of mechanical skill and did not involve invention beyond that found and recognized by the Board of Appeals.

It must not be overlooked that in the famous case of Potts & Co. v. Creager, 155 U. S. 597, 15 S. Ct. 194, 198, 39 L. Ed. 275, so strongly relied upon by appellant in the instant case, the Supreme Court, after pointing out that inventive genius might be required "to grasp the idea that a device used in one art may be made available in another," went further and said: "As a result of the authorities upon this subject, it may be said that, if the new use be so nearly analogous to the former one that the applicability of the device to its new use would occur to a person of ordinary mechanical skill, it is only a case of double use; but if the relations between them are remote, and especially if the use of the old device produce a new result, it *may* at least involve an exercise of the inventive faculty. Much, however, must still depend upon the nature of the changes required to adapt the device to its new use." (Italics quoted.)

It is not deemed necessary to lengthen this opinion by a discussion of other cases cited by appellant. The facts in the cases from which quotations are made by him rendered the principles there announced applicable in those cases. The facts of this case do not, in our opinion, render them applicable here.

The decision of the Board of Appeals is affirmed.

**Affirmed.**